**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| TODD BRAUCKMILLER, | § | |
| *Plaintiff* | § | |
| | § | |
| v. | § | Case No.  SA-23-CA-01182-XR |
| | § | |
| THE UNIVERSITY OF TEXAS SAN | § | |
| ANTONIO, | § | |
| *Defendant* | § | |

## ORDER ADOPTING REPORT AND RECOMMENDATION

On this date the Court considered United States Magistrate Judge Elizabeth S. Chestney's Report and Recommendation ("R&R") (ECF No. 155) addressing the parties' cross-motions for summary judgment (ECF Nos. 141, 143) and Plaintiff's objections thereto (ECF No. 158). After careful consideration, the Court issues the following order.

## BACKGROUND

This is an employment case arising out of Plaintiff Todd Brauckmiller's termination from his employment at the University of Texas San Antonio ("UTSA") following an investigation into whether he sexually harassed one of his colleagues. Plaintiff, appearing *pro se*, alleges that his termination was pretext for discrimination. He asserts claims for race and sex discrimination and retaliation under Title VII of the Civil Rights Act of 1964.

### I.    Factual Background[1]

Dr. Brauckmiller worked for UTSA in its Minority Business Development Agency ("MBDA") Business Center as a senior manager and supervisor from November 2021 to July 2022, when he was terminated for violating UTSA's policy on sexual harassment  and  sexual misconduct. ECF No. 141-2 at 1 (Offer Letter); ECF No. 141-11 (Termination Notice).

---

[1] These facts are undisputed unless otherwise noted.

The termination occurred following an investigation by UTSA's Equal Opportunity Office ("EOS"), which concluded that Dr. Brauckmiller had engaged in "inappropriate behavior" with one of his direct reports, Rosana Gomez, in violation of UTSA's Handbook of Operating Procedures ("HOP") 9.24. *Id.* HOP 9.24 implements Title IX's and Title VII's prohibition on sex discrimination and harassment in employment and sets forth a comprehensive administrative procedure for processing, investigating, and adjudicating complaints by UTSA employees. ECF No. 141-12 at 1–21. EOS issued its Final Report on June 24, 2022. ECF No. 141-9 at 2–27.

According to the report, EOS received multiple reports from UTSA employees on March 2, 2022, that Ms. Gomez was feeling unsafe and uncomfortable with her supervisor, Dr. Brauckmiller, due to his comments on her social media, his messages to her, and their interactions during working hours. *Id.* at 2 n.1. The next day, Dr. Brauckmiller was placed on administrative leave with pay pending the results of the EOS investigation. *Id.* at 2 n.2.

The EOS report summarized Ms. Gomez's allegations, paraphrased below:

1. Dr. Brauckmiller engaged in inappropriate behavior with Ms. Gomez after texting her on her personal cell phone to request access to her social media accounts;

   a) He began to follow her on social media and sent her a text message and made the following comment, "You must have a lot of stalkers huh Lol?"

   b) In the same text conversation, Dr. Brauckmiller sent Ms. Gomez a message stating, "Wow Roxana I'm Speechless! ! ! ! ! ! ! ! What a page. Wow," with three happy face emojis.

   c) On the same text message thread, Dr. Brauckmiller texted Ms. Gomez, "Gosh, I'm trying to stay professional!" and included two thinking face emojis and two hysterical smiling/laughing face emojis.

2. Dr. Brauckmiller engaged in inappropriate behavior with Ms. Gomez by the manner in which he communicated with her on social media accounts.

   a) Dr. Brauckmiller made Ms. Gomez uncomfortable by asking to join her social media account Instagram and began posting responses on her account.

b)  After Ms. Gomez posted a picture of herself from a recent vacation wearing a swimsuit, Dr. Brauckmiller posted on Ms. Gomez's account three emojis with a "sizzling fire" and "hands raised up."[2]

c)  Dr. Brauckmiller commented on Ms. Gomez's Instagram video story of her working out, "Wow Roxana. Between you and I. Wow!!!!!" and included five emojis of "clapping hands."

d)  Dr. Brauckmiller sent a Direct Message (DM) to Ms. Gomez on her Instagram account telling her to "have a good workout" with a "strong arm" emoji followed by the comment in Ms. Gomez's DM, "You look great. I'm sure working out with you is great motivation!!!".

e)  Dr. Brauckmiller reacted to a video story that Ms. Gomez posted with an image of Ms. Gomez and two friends with a "sizzling fire" emoji.

3.  Because of Dr. Brauckmiller's interactions with Ms. Gomez through her social media account, Ms. Gomez has not felt comfortable around Dr. Brauckmiller as her direct supervisor.

a)  Ms. Gomez said that she feels that Dr. Brauckmiller's "advances are unwanted" and is fearful that he will retaliate against her. Ms. Gomez stated that she felt that Dr. Brauckmiller was always giving her more attention than the other females in the office, even after she told him that she had a long-term boyfriend.

b)  Ms. Gomez stated that Dr. Brauckmiller inquired about her relocating to the University Heights office location that he occupies but did not make the same inquiry to other members of the team. Ms. Gomez stated that Dr. Brauckmiller told her "Don't you want to move over here with us" and suggested that she move even though she told him she did not want to relocate offices.

4.  Ms. Gomez was scheduled to attend a conference in Laredo in March, and Dr. Brauckmiller told her that he would take her and the other female attending to Padre Island, which made her uncomfortable.

*Id.* at 2–3.

As required under UTSA policy HOP 9.24, EOS investigated the reports and allegations and determined that they did not rise to the level of illegal sexual harassment as defined by Title IX. *Id.* at 5. But EOS found the allegations were nonetheless serious enough

---

[2] Throughout the EOS investigation and the course of this litigation, Dr. Brauckmiller has vociferously disputed that these emojis were directed at the vacation photo, insisting that they were directed at a photo of Ms. Gomez at the rodeo.

to proceed with the investigative process to evaluate whether they constituted "Other Inappropriate Sexual Conduct and Hostile Environment." *Id.*

In its investigation, EOS met with Dr. Brauckmiller and Ms. Gomez, interviewed an additional eight witnesses, and reviewed the evidence submitted by the parties and independently gathered. *Id.* at 6–17. EOS did not hold a hearing, although Dr. Brauckmiller insists that he should have been provided one. *See, e.g.*, ECF No. 158 at 4, 6, 7, 11.

EOS found Ms. Gomez's allegations credible, as they had been corroborated by both witnesses and objective evidence. Based on this finding, EOS concluded that Dr. Brauckmiller had violated HOP 9.24 by engaging in "Other Inappropriate Sexual Conduct" as set forth in Section 1.1 ("unwelcome romantic, flirtatious, or sexual advances") and Section 1.4 ("gratuitous comments, jokes, questions, anecdotes or remarks of a sexual nature about clothing or bodies") of the Policy. *Id.* at 23. EOS also found that Dr. Brauckmiller created a "Hostile Environment" as defined in the Policy. *Id.* at 27.

On July 22, 2026, about a month after EOS issued its report, Dr. Brauckmiller received a termination notice, stating, in relevant part:

> The purpose of this letter is to notify you that your employment as a Senior Project Manager at The University of Texas at San Antonio (UTSA) is being terminated effective close of business today, 7/22/2022 for violating the Handbook of Operating Procedures (HOP) 9.24 Sexual Harassment and Sexual Misconduct Policy.
>
> On March 3, 2022, you were placed on administrative leave with pay pending the results of an investigation conducted by Equal Opportunity Services/Title IX Office (EOS). The investigation was based on allegations that you may have violated certain provisions of the Handbook of Operating Procedures (HOP) 9.24 Sexual Harassment and Sexual Misconduct Policy. Based on the EOS final report dated June 24, 2022, EOS found that you engaged in inappropriate behavior with your direct report, violating HOP 9.24. The conduct outlined in the EOS final report is unacceptable and as a result, your employment is being terminated effective today.

ECF No. 141-11 (Termination Notice issued by Rod McSherry).

4

After he was terminated, Dr. Brauckmiller requested a review of the EOS proceedings from Trey Atchley, the Chief Inquiry Officer of the University of Texas System, complaining the EOS conducted a biased investigation, altered and concealed evidence, and denied him his right to impartial proceedings. ECF No. 141-10 at 1–2. Five days later, Mr. Atchley concluded, "The investigation performed by UTSA followed the guidelines set out in HOP 9.24 and appears to have been conducted fairly, impartially, objectively and professionally. Based on a review of the information provided, we consider this matter closed." *Id.*

## II.    Procedural History

Plaintiff first filed this suit in state court against Defendant UTSA, alleging violations of the First Amendment, Title IX, Title VII, and the Fair Labor Standards Act ("FLSA"). ECF No. 1, Exh. A at 8–11. UTSA removed the petition to this Court based on federal question jurisdiction. *See* ECF No. 1. Following removal, Plaintiff filed a First Amended Complaint ("FAC") that, *inter alia*, abandoned his claims under the First Amendment, Fourteenth Amendment, FLSA, and Title IX. *See* ECF No. 28 (FAC); ECF No. 49 at 9–10 (order adopting the Magistrate Judge's recommendation as to the abandonment of certain claims).[3]

In March 2025, Dr. Brauckmiller moved for leave to file a second amended complaint. ECF No. 66. In May 2025, the Court adopted the Magistrate Judge's recommendation to grant the motion as to Dr. Brauckmiller's Title VII retaliation claim but dismiss his ADA and hostile-work

---

[3] The Court further adopted the Magistrate Judge's recommendation to dismiss several causes of action added in the FAC, including (1) claims under the Uniformed Services Employment and Reemployment Act ("USERRA"), and federal and Texas whistleblower laws, for lack of subject matter jurisdiction; (2) Title VII claims against UTSA President Taylor Eighmy, because individuals cannot be liable under Title VII; and (3) claims for violations of the Americans with Disabilities Act ("ADA") and the Age Discrimination in Employment Act ("ADEA") and hostile-work-environment claims under Title VII. *See* ECF No. 49 at 9–10. The Court granted Dr. Brauckmiller permission to seek leave to file a further amended complaint curing the deficiencies in the FAC as to his ADA, ADEA, and hostile-work-environment claims. *Id.* at 11–12.

environment claims with prejudice for failure to allege sufficient facts in support of those claims. *See* ECF No. 86.

UTSA moved for summary judgment on Dr. Brauckmiller's remaining claims for race and sex discrimination and retaliation under Title VII. ECF No. 141. Dr. Brauckmiller filed a cross-motion for affirmative summary judgment.[4] ECF No. 143. The parties also filed various supplemental filings, responses, and replies to the motions. *See* ECF Nos. 146–48, 151–53.

## III.    The Magistrate Judge's Report and Recommendation

On March 31, 2026, the Magistrate Judge issued a report and recommendation on the parties' cross-motions for summary judgment, recommending that the Court grant UTSA's motion and deny Dr. Brauckmiller's motion. ECF No. 155.

### A.    Plaintiff's claims for race and sex discrimination under Title VII

To begin, the Magistrate Judge concluded that Dr. Brauckmiller had failed to make a prima facie case of discrimination under the *McDonnell Douglas* framework because he had failed to identify appropriate comparators outside of his protected classes who were treated more favorably under "nearly identical circumstances." *See id.* at 14 (quoting *Lee v. Kans. City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009)). The two comparators he proposed—Ms. Gomez and Jose Munoz, both younger Hispanic employees—were his direct reports and subordinates, not peers, defeating comparator status as a matter of law. *See id.* (citing *Turner v. Kans. City S. Ry. Co.*, 675 F.3d 887, 893 (5th Cir. 2012)).

---

[4] Although Dr. Brauckmiller's motion addresses both Title VII and an "ADA failure-to-accommodate" claim, his ADA claim was dismissed with prejudice in May 2025. *See* ECF No. 86 at 12.

The Magistrate Judge further reasoned that, even if Dr. Brauckmiller had established a *prima facie* case of discrimination, he had failed to produce evidence from which a factfinder could conclude that his race or sex was a motivating factor in his termination. *See id.* at 14–15.

UTSA articulated a legitimate, nondiscriminatory reason for termination: the EOS investigation concluded that Plaintiff engaged in "Other Inappropriate Sexual Conduct" toward a subordinate and violated UTSA's sexual-harassment policy. *Id.* at 15; *see* ECF No. 141-11 (Termination Notice) ("EOS found that you engaged in inappropriate behavior with your direct report, violating HOP 9.24. The conduct outlined in the EOS final report is unacceptable and as a result, your employment is being terminated effective today.").

The Magistrate Judge rejected Plaintiff's argument that alleged procedural deficiencies in the EOS investigation suggest that UTSA's reliance on the EOS report was pretext for discrimination:

> Even if the conclusions of the EOS investigation had been mistaken, that would not be enough to show the decision-makers did not have a legitimate, nondiscriminatory reason to terminate him. When a decision-maker relies on the results of an investigation by a third party, any evidence that the third party's investigation was flawed or yielded inaccurate results does not constitute evidence that the decision-maker's decision in reliance on the investigation's results was pretext for discrimination.

ECF No. 155 at 15 (citing *Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 476–77 (5th Cir. 2005).

The Magistrate Judge rejected Dr. Brauckmiller's allegations of evidence tampering and investigative bias as insufficient, reasoning that even, e.g., Ms. Gomez's purported removal of emojis from certain communications with Dr. Brauckmiller would not materially undermine EOS's conclusions because Plaintiff had admitted making suggestive comments about her appearance and Gomez provided an explanation for continuing to engage despite discomfort. *Id.* at 16–17.

Dr. Brauckmiller testified in his deposition that he believes his termination was the result of a conspiracy among various UTSA Human Resources and other employees to villainize him. ECF No. 141-1, Brauckmiller Dep. at 96:6–97:22. As the only evidence that this alleged conspiracy was rooted in sex and race discrimination, Dr. Brauckmiller cited a public comment on social media by Suzanne Patrick, Director of EOS and Title IX Coordinator, that purportedly demonstrated animus against older white men. *Id.* at 98:2–6, 186:22–25. In response to Ms. Patrick's cover photo—a drawing of former Supreme Court Justice Ruth Bader Ginsburg with a quote regarding a woman's right to choose to have an abortion—one of her friends commented:

> I try so hard not to be political, but when will old white men decide that a woman aren't smart enough or caring enough to be in charge of their own bodies. [sic] I am both furious and sad about what our Supreme Court has become.

ECF No. 141-3 at 1. Ms. Patrick responded, "I know…". *Id.* Dr. Brauckmiller acknowledged, however, that Ms. Patrick had never made and race- or sex-based comments to him. ECF No. 141-1, Brauckmiller Dep. at 184:18–24.

Applying the Fifth Circuit's stray-remarks framework,[5] the Magistrate Judge reasoned that Ms. Patrick's comment could not create a triable fact issue on discriminatory motive because it was unrelated to Dr. Brauckmiller, the investigation or his termination, and was not even made by the person who decided to terminate him. ECF No. 155 at 15.

**B.      Plaintiff's claim for retaliation under Title VII**

Finally, the Magistrate Judge recommended that the Court dismiss Dr. Brauckmiller's retaliation claim. ECF No. 155 at 18–20. Dr. Brauckmiller's retaliation claim hinges on his

---

[5] The Fifth Circuit has explained that "comments are evidence of discrimination only if they are 1) related to the protected class of persons of which the plaintiff is a member; 2) proximate in time to the complained-of adverse employment decision; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue." *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 380 (5th Cir. 2010) (internal quotation omitted). "Comments that do not meet these criteria are considered 'stray remarks,' and standing alone, are insufficient to defeat summary judgment." *Id.*

assertion that he was terminated because he filed numerous complaints in which he alleged discrimination in the EOS investigation and a lack of due process from March to July 2022, and lodged a "counterclaim" against Ms. Gomez of sexual harassment related to a comment she made about his son on the same date he was placed on administrative leave. *See* ECF No. 78 at 6; ECF No. 141-1, Brauckmiller Dep. at 154:1–3.

To begin, the Magistrate Judge found the timing of Dr. Brauckmiller's complaints dispositive, concluding that because they were filed only *after* he was placed on administrative leave pending the investigation of Ms. Gomez's report, "Dr. Brauckmiller's complaints about the investigation of Ms. Gomez's complaints cannot be the *cause* of the investigation; they were his *reaction* to it." ECF No. 155 at 19 (emphasis added).

As to termination, the Magistrate Judge concluded that Dr. Brauckmiller had not created a triable fact issue as to whether his complaints—about the EOS investigation and Ms. Gomez— were the but-for cause of his termination because "[t]he only evidence connecting his complaints to the termination decision is the temporal relationship between the two."[6] ECF No. 155 at 20 (citing *Garcia v. Prof'l Contract Servs.*, 938 F.3d 236, 243–44 (5th Cir. 2019).

---

[6] "[T]he ultimate determination in an unlawful retaliation case is whether the conduct protected by Title VII was a 'but for' cause of the adverse employment decision." *Newsome v. Collin Cnty. Cmty. Coll. Dist.*, 189 F. App'x 353, 356 (5th Cir. 2006). Even if retaliation is a motivating factor in a termination decision, no liability "arises if the employee would have been terminated even in the absence of the protected conduct." *Id.* (quoting *Long v. Eastfield Coll.*, 88 F.3d 300, 305 n.4 (5th Cir. 1996)). Thus, while temporal proximity alone between protected activity and termination can make out a *prima facie* case of retaliation, it cannot sustain the but-for causation requirement on its own. *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001); *Garcia v. Prof'l Contract Servs., Inc.*, 938 F.3d 236, 243–44 (5th Cir. 2019).

**DISCUSSION**

**I.      Legal Standards**

  **A.      Review of Objections to a Report and Recommendation**

A party may serve and file objections to a Report and Recommendations within fourteen days. FED. R. CIV. P. 72(a), (b)(2). "Parties filing objections must specifically identify those findings objected to. Frivolous, conclusive or general objections need not be considered by the district court." *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir. 1982), *overruled on other grounds by Douglass v. United States Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

Courts must review *de novo* any of the Magistrate Judge's conclusions to which a party has specifically objected. *See* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."). Any sections that were not clearly objected to are reviewed for clear error to determine whether they are contrary to law. *Id.*; *see also United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir. 1989), *cert. denied*, 492 U.S. 918 (1989).

  **B.      Summary Judgment**

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the non-moving party's claim or defense, or, if the crucial issue is one for which the nonmoving party will bear the burden of proof at trial, merely point out that the evidence in the record is insufficient to support an essential element of the nonmovant's claim or defense. *Little v. Liquid Air Corp.*, 952 F.2d 841,

10

847 (5th Cir. 1992), *on reh'g en* banc, 37 F.3d 1069 (5th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *See Fields v. City of S. Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991). Any "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Rather, the nonmovant must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). The Court will not assume "in the absence of any proof . . . that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075.

For a court to conclude that there are no genuine issues of material fact, the court must be satisfied that no reasonable trier of fact could have found for the nonmovant, or, in other words, that the evidence favoring the nonmovant is insufficient to enable a reasonable jury to return a verdict for the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In making this determination, the court should review all the evidence in the record, giving credence to the evidence favoring the nonmovant as well as the "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000). The Court "may not make credibility determinations or weigh the evidence" in ruling on a motion

for summary judgment, *id.* at 150, and must review all facts in the light most favorable to the nonmoving party. *First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 181 (5th Cir. 2009).

"On cross-motions for summary judgment, we review each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Amerisure Ins. Co. v. Navigators Ins. Co*., 611 F.3d 299, 304 (5th Cir. 2010).

## II.    Analysis

Plaintiff raises several, overlapping categories of objections. He asserts that the R&R (A) improperly resolved disputed facts in UTSA's favor; (B) applied the wrong Title IX regulatory framework; and (C) failed to address evidence of pretext, retaliation causation, and spoliation. *See* ECF No. 158.

### A.    The Magistrate Judge's Purported Weighing of Evidence

Dr. Brauckmiller objects that the R&R relies on a selective reading of the record, makes impermissible credibility determinations, and improperly resolves disputed facts in favor of UTSA, despite his competing sworn declarations and UTSAPD's findings identifying possible tampering, incomplete documentation, and the need for further interviews. ECF No. 158 at 2–3, 5.

But the question on summary judgment is not whether Dr. Brauckmiller disputes the findings in the EOS report or even whether EOS's finding were accurate. The question is whether UTSA was entitled to rely on the EOS report and, if not, whether its bad-faith reliance was pretext for discrimination or retaliation. As the Magistrate Judge accurately explained, "[i]t is not this Court's role to evaluate the veracity of Ms. Gomez's allegations but rather whether UTSA 'reasonably believed the employee's allegation and acted on it in good faith.'" ECF No. 155 at 16 (quoting *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 379 (5th Cir. 2010).

Dr. Brauckmiller has not identified competent summary judgment evidence suggesting that UTSA's reliance on the EOS report was pretext for either sex-discrimination or retaliation. *Little*, 37 F.3d at 1075; *Brown*, 337 F.3d at 541. Plaintiff argues that his sworn submissions constitute competent summary-judgment evidence that cannot be disregarded in favor of unsworn EOS summaries. ECF No. 158 at 3.

But the Magistrate Judge did not disregard Dr. Brauckmiller's submissions; rather, she concluded that, even crediting his sworn statements, the record does not raise a *material* fact issue as to either of his Title VII claims. *See* ECF No. 155 at 16–18; *cf. Reeves*, 530 U.S. at 151 (directing courts to give credence to evidence that is "uncontradicted and unimpeached . . . the extent that that evidence comes from *disinterested* witnesses") (emphasis added). In other words, even accepting his allegations as true, "no reasonable trier of fact could have found for [Dr. Brauckmiller]," *Anderson*, 477 U.S. at 248.

Similarly, Dr. Brauckmiller objects that the Magistrate Judge mischaracterized the record by (1) introducing the term "backside," which he states appears nowhere in the underlying materials; and (2) by implying that he asked for Ms. Gomez's phone number, when she provided it without prompting. *See* ECF No. 158 at 2. The term "backside" accurately and impartially describes the camera's point of view in the photograph of Ms. Gomez in her swimsuit at issue in the underlying EOS investigation. *See* ECF No. 141-9 at 36. The specific terminology the Magistrate Judge chose to describe the photo is immaterial to her recommendation. Whether Ms. Gomez provided her phone number without prompting is also immaterial in light of the summary judgment record. Even if Dr. Brauckmiller did not solicit her number:

> Certain findings by the investigation are not in dispute. Notably, Dr. Brauckmiller has admitted to texting and direct messaging Ms. Gomez— his subordinate employee—on numerous occasions, including after 9:00

> p.m. on a Saturday night with comments that are objectively suggestive and concern Ms. Gomez's physical appearance.

ECF No. 155 at 16 (citations omitted).

Moreover, even if the EOS's report contained some inaccuracies, an employer "may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." *Eugene v. Rumsfeld*, 168 F. Supp. 2d 655, 678 (S.D. Tex. 2001) (citation omitted); *see also Nieto v. L&H Packing Co.*, 108 F.3d 621, 624 (5th Cir. 1997) ("Title VII does not shield employees from general unfairness; it prohibits adverse actions taken because of race, sex, or other protected characteristics.").

Dr. Brauckmiller did not depose Ms. Gomez, a UTSA representative, or any other witness in support of his discrimination claim. Rather, he insists that UTSA is liable for discrimination under a "cat's paw" theory, asserting that Ms. Patrick, a purportedly biased supervisor, shaped the evidentiary inputs on which the termination decision rested. ECF No. 158 at 5 (citing *Staub v. Proctor Hosp.*, 562 U.S. 411, 422 (2011)). But it is undisputed that Ms. Patrick did not author the EOS report, did not interview Plaintiff during the investigation, and was not the decision-maker for termination. Thus, Plaintiff has not produced competent evidence that Ms. Patrick's alleged bias was the proximate cause of his termination.

In short, nothing in Dr. Brauckmiller's submissions beyond his own subjective belief suggests that UTSA relied on the EOS report in bad faith as pretext for sex-discrimination or retaliation. Subjective belief of discrimination, however genuine, cannot be the basis of judicial relief. *See Little v. Republic Refining Co., Ltd.*, 924 F.2d 93, 96 (5th Cir. 1991).

**B.      Application of Incorrect Title IX Regulatory Framework**

Plaintiff objects that the Magistrate Judge applied the 2024 Title IX regulations rather than the 2020 regulations in effect at the time of the 2022 investigation. ECF No. 158 at 4 (referring to

14

a footnote in which the Magistrate Judge stated that "[t]he regulations implementing Title IX do not require a live hearing." ECF No. 155 at 9 n.5 (citing 34 C.F.R. § 106.46(g)).

While it appears that the 2020 regulations did require postsecondary institutions to provide for a live hearing, *see* 34 C.F.R. § 106.45(b)(6)(i) (2020), that discrepancy has no bearing on Plaintiff's claims in this case, for two reasons.

To begin, procedural deficiencies in an internal investigation may be relevant to a Title IX claim, but they do not establish that Plaintiff's termination was motivated by race or sex discrimination under Title VII.

Moreover, given that EOS found in Dr. Brauckmiller's favor as to the Title IX complaint— i.e., that his conduct did *not* rise to the level of illegal sexual harassment under Title IX—it is not clear that he would have standing to challenge any procedural deficiency even under Title IX. *See* ECF No. 141-9 at 5.

Thus, Plaintiff's objection that the Magistrate Judge mischaracterized the Title IX regulations applicable at the time of the investigation is overruled.

## C.      Alleged Failure to Address Evidence of Spoliation

Dr. Brauckmiller argues that the Magistrate Judge failed to address the destruction of evidence after litigation notice. ECF No. 158 at 7, 11. The Magistrate Judge separately addressed this issue in denying Plaintiff's Motion to Correct and Clarify the Record (ECF No. 140), which she construed as a motion for reconsideration of the prior order denying sanctions (ECF No. 139), and found no manifest error of law or fact. Plaintiff's objections do not identify new evidence or legal authority warranting reconsideration of that determination. *See generally* ECF No. 158.

Having conducted a *de novo* review of the challenged portions of the R&R, the Court finds the Magistrate Judge's analysis sound and supported by the record.

15

## CONCLUSION

For the foregoing reasons, Dr. Brauckmiller's objections (ECF No. 158) are **OVERRULED**, and the R&R (ECF No. 155) is **ADOPTED** in its entirety.

Accordingly, UTSA's Motion for Summary Judgment (ECF No. 141) is **GRANTED**, Brauckmiller's Motion for Summary Judgment (ECF No. 143) is **DENIED,** and his claims are **DISMISSED WITH PREJUDICE**. A final judgment will issue pursuant to Rule 58.

It is so **ORDERED**.

**SIGNED** this 5th day of June, 2026.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

16